[No. 37795. Department One. November 10, 1965.]

FRANK B. JAMES, *Appellant*, v. CENTURY 21 EXPOSITION, INC., *Respondent*, CLARENCE BUCKINGER *et al.*, *Appellants*.*

*Lee R. McNair*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for respondent.

PER CURIAM.—Plaintiff James and the additional defendants appeal from a judgment of dismissal granted on a challenge to the sufficiency of the evidence; they also appeal, as stated in appellants' brief, that portion of the judgment in the sum of $460.13 awarded defendant corporation on its cross claim "to the extent that it will constitute an offset in the event plaintiff's appeal is well taken."

The record consists solely of the judgment and the findings of fact and conclusions of law. There being neither a statement of facts nor exceptions to the findings, we must accept the findings as verities. The appeal is based exclusively on the conclusions of law derived from the findings.

In 1961, defendant Century 21 Exposition, Inc., organized and established and in 1962 conducted an international exposition in Seattle, popularly known as the Seattle World's Fair. Mr. James and his partners negotiated with the defendant corporation in the fall of

*Reported in 407 P.2d 822.

1961 for rental space in which to operate a concession called the "Sculptograph", a process for casting and selling facial busts to the fair's visitors. During negotiations months prior to the opening of the fair and before signing the agreement which gave them possession, the defendant's agents showed the partners a symbol on a map of the fairgrounds which indicated a barricade at a place where the partners had actually observed a barricade—a barricade located in such a manner with reference to the east gate of the fairgrounds as to force pedestrian traffic past the prospective location of the concession.

The space agreed upon was under the north grandstand of the Seattle High School Memorial Stadium, in an area known as the north concourse; the partners signed a contract consisting of two instruments, namely, the space agreement and the general license agreement, renting the space at a rate of $12 per square foot on February 9, 1962.

Defendant corporation failed to maintain permanent barricades at the place assumed by the partners or to erect any other structure for the purpose of diverting pedestrian traffic through the north concourse in the manner contemplated by the partnership. Mr. James and his partners brought this action for the difference in rental value between the $12 per square foot agreed upon for inside space and $4 per foot for ordinary outside space.

Our study of the record convinces us that no reversible error is shown and that the findings of fact support the conclusions of law.

First, as to the claimed representations that barricades would be maintained to divert traffic past the concession, the trial court found in finding No. 7 that:

> At the time the concession contract was executed, however, it was understood by both the defendant and the members of the partnership that the actual plan for the development of the area was not clearly formulated and would probably not be so until the opening of the fair or later. Such representations as were made with respect to the development of the North Concourse area were not representations as to existing facts.

And, alluding to the written agreement between the parties, the court made finding of fact No. 13:

> The defendant reserved to itself under the terms of the contract between the parties and, specifically, under Paragraph XII of the General License Agreement, Exhibit B, the right to:
> ". . . make any changes, alterations, improvements or additions, structural or otherwise, from time to time to, upon or near the Premises or any improvements thereon, whether required by law or not and whether as part of a general plan affecting the other premises in the Exposition or not, . . ."
> By removing the construction barricades and not replacing the same with permanent barricades during the period of the exposition, the defendant was exercising a right which it reserved to itself under the terms of its contract with the partnership.

Further, in finding No. 6, the trial court upheld the provisions of the contract exonerating defendant of liability for any claims, as follows:

> "Condition of Premises. Licensee represents that it has inspected and examined the physical condition of the premises, including improvements thereon, if any, the soil and sub-soil, and Licensee accepts

the premises in their present existing condition. Licensee covenants that no representations, statements or warranties, express or implied, have been made by or on behalf of Licensor with respect to the condition of the premises or the use or occupancy that may be made thereof . . . .

". . . .

"Damage Waiver. Licensee hereby expressly waives any and all claims of whatsoever nature for any or all loss or damage sustained by reason of any defect, deficiency, failure or impairment of the Premises or any service in or to the Premises . . . ."

There being no finding of fraud, we determine, therefore, that the facts do support a conclusion that defendant corporation had a contractual right to change the traffic flow pattern on the fairgrounds without incurring liability to the partnership for loss of business occasioned thereby.

Judgment affirmed.